making or vending a patented article, "to give sufficient notice to the public that the same is patented; either by affixing thereon the word 'Patented' together with the day and year the patent was granted; or when from the character of the article this cannot be done, by fixing to it or to the package wherein one or more of them is enclosed, a label containing a like notice.".

It was conceded by plaintiff's counsel on the argument that defendant had held patents upon sewing machines, issued by the United States at the several dates mentioned in the declaration; but the point made was that because these patents had expired, the defendant had no longer the right to affix to the machine the word "Patented" or any other word or sign importing that it or any part of it was patented or had been patented. This is a highly penal statute, and its scope will not be extended by implication. It must be strictly construed. U. S. v. Wiltberger, 5 Wheat. [18 U. S.] 76; Andrews v. U. S. [Case No. 381].

The law of the United States in force at the several dates inscribed on these machines, limited the life of a patent to 21 years,—that is, 14 years for the original term, and 7 years extension, if an extension is granted. It is clear then that at the time when defendant is charged to have committed this offense, the patents mentioned in the inscription had expired by limitation of law, even if all had been extended so as to remain in force the full 21 years.

The mischief which this statute was intended to punish, can hardly be stated more concisely than in the words of the law itself: "The purpose of deceiving the public," that is, stating falsely that an article is then the subject-matter of a patent. And can it be said that the public is deceived by the notice inscribed upon, or affixed to, a manufactured article, that has been patented, and that the patent has expired? The "public" is presumed to know the law as well as the patentee—to know that a patent issued on the 9th day of October, 1855, had expired on the 1st day of November, 1876. If, therefore, the inscription be true in fact, as it is conceded to have been in this case, I am of opinion that it does not subject the defendant to the penalty of this statute.

It may be valuable information to the public to be told that a machine offered for sale is made in accordance with a patent which has been granted, but which has expired. So that purchasers instead of being deceived, have only desirable or important facts imparted to them, and are able to act more intelligently in dealing with the manufacturer or vendor.

The law makes it the duty of the manufacturer of a patented article, during the time the patent is in force, "to give notice to the public that the same is patented, by fixing thereon the word 'Patented,' with the day and year the patent was granted," and I do not see anything in the spirit of this clause of the law which prevents the manufacturer from continuing to affix such word and date after the expiration of the patent.

This being a highly penal statute, it was the duty of the pleader in making a case under it to negative all presumptions in favor of the innocence of the defendant. 1 Chit. Pl. 221. The allegation is, that "on the first day of November, 1876, said machines were not nor was any part of them patented." The act charged, when construed in the light of the law, in regard to the duration of patents, does not import that they were then patented, or that they are made under any patent in force on the 1st day of November, 1876, but directly the contrary. The legal meaning of the words said in this case to have been affixed to defendant's machines is: "This machine was patented at such a date, but the patent has expired." This is the fair import of the words which defendant is charged with using, and I do not think they make a case within the intent of the law.

I do not deem it necessary to discuss the special causes of demurrer assigned, and which go only to the form of the declaration —those could readily be cured by amendment. The wish expressed by counsel upon the argument was that I should pass upon the merits of the case as stated. Demurrer sustained.

[Final judgment having been entered, plaintiff appealed to the circuit court, where the judgment of this court was affirmed. 12 Fed. 57.]

---

WILSON (SMITH v.). See Case No. 13,128.

---

## Case No. 17,837.
### WILSON v. STEWART et al.
[1 Cranch, C. C. 128.] [1]

Circuit Court, District of Columbia. June Term, 1803.

CHANCERY ATTACHMENT—BRITISH BANKRUPT ASSIGNEES.

In a chancery attachment against a British bankrupt, the court will permit the assignees of such bankrupt, on giving security and producing a copy of the proceedings of the commissioners certified by a notary-public, at Liverpool, in England, who is certified to be such by the American consul at Liverpool, to be made parties to defend the suit, and to release the attached effects.

[Cited in Addison v. Duckett, Case No. 77.]

Attachment in chancery. Security given, attachment dissolved.

Mr. C. Lee moved that the assignees of Stewart, under a commission of bankruptcy taken out in England, might be admitted as defendants. And to show that they were the assignees, he offered a copy of the proceedings of the commissioners, certified by a notary-public at Liverpool, and a certificate of

[1] [Reported by Hon. William Cranch, Chief Judge.]

the American consul at Liverpool, that the notary was a notary-public duly commissioned, &c. Act of Assembly, Rev. Code, 168.

Mr. Taylor objected that this copy is not within the act of assembly, and there is no law authorizing such copy to be admitted as evidence.

Objection overruled, and the assignees made defendants.

Mr. C. Lee moved that Stewart might be admitted to answer by his attorney in fact.

THE COURT did not refuse to suffer the answer by attorney to be filed.

## Case No. 17,838.

### WILSON v. STODDARD.

[4 N. B. R. 254 (Quarto, 76); [1] 2 Chi. Leg. News, 161.]

District Court, D. Michigan. Nov., 1870.

SALE BY BANKRUPT—VALIDITY—BURDEN OF PROOF.

1. The 35th section of the bankrupt act [of 1867 (14 Stat. 534)], which declares a sale, transfer, etc., not made in the usual and ordinary course of business of the debtor, shall be prima facie evidence of fraud, throws the burden of proof on the purchaser to sustain the validity of his purchase.

2. In such a case the proofs may be taken ore tenus at the hearing.

3. Under the evidence in this case the sale was void.

D. M. Dickinson and George Gray, for plaintiff.

John T. Holmes, for defendant.

WITHEY, District Judge. The petition upon which this hearing is had, was filed by plaintiff, and alleges that about the 10th of August, 1868, the bankrupt made to defendant a sale and transfer of a stock of goods of the value of six thousand dollars, and within six months from the filing of the petition upon which Cummings was declared a bankrupt; that Cummings was then insolvent, that defendant had reasonable cause to believe him insolvent, and to be acting in contemplation of insolvency, and that the transfer was made with a view to impair, hinder, impede, and delay the operation and effect of the provisions of the bankrupt act. Defendant was ordered to show cause; and having denied the allegations of the petition, the case has been heard upon proofs. Defendant's counsel has taken exceptions to the petition and to the proofs being taken ore tenus at the hearing, which are overruled. The facts disclose that Cummings was at the date of the sale insolvent, and that defendant knew of his embarrassed condition. Defendant's counsel conceded this upon the argument. Cummings was a trader at Plainwell, Allegan county, in this district, and had been for several years doing a general country trade. At the time of

[1] [Reprinted from 4 N. B. R. 254 (Quarto, 76) by permission.]

30FED.CAS.—15

the sale of his goods to defendant, there was a mortgage lien thereon of two thousand two hundred dollars to one Sissen, of Plainwell, for money loaned; and also a mortgage to one Brigham, on that part of the stock composed of boots and shoes, on which was unpaid two thousand eight hundred dollars. Cummings owed among other indebtedness in addition to those mortgage debts, one thousand dollars to one Cory, being the amount of two notes of five hundred dollars each, on one of which defendant was liable as indorser. He also owed defendant one thousand one hundred and four dollars not secured, and four hundred dollars to parties not named. Of all this indebtedness defendant admits to have had knowledge when he bought the property of Cummings. His purchase amounted to six thousand one hundred and ninety-seven dollars and twenty-seven cents for goods, and about fifty dollars for accounts bought from Cummings—say six thousand two hundred and forty-seven dollars, total purchase price of goods and accounts. He was to pay by canceling Cummings' debt to defendant of one thousand one hundred and four dollars and fifty-one cents; paying the notes of Cummings to Cory, five hundred dollars and five hundred and four dollars respectively, and by paying Sissen's mortgage of two thousand two hundred dollars. He also gave Cummings his two notes—one for one thousand dollars, the other for eight hundred and eighty-eight dollars. Other creditors have proved debts of more than four thousand dollars against the bankrupt, of which defendant swears he had no knowledge. The sale by Cummings to defendant covered all the bankrupt's property except the boots and shoes, part of his stock mortgaged to one Brigham, and by him taken, at or about the time of sale to defendant, to satisfy two thousand eight hundred dollars.

The provision of section 35 of the bankrupt act, which declares a sale, transfer, etc., not made in the usual and ordinary course of business of the debtor, shall be prima facie evidence of fraud, throws the burden of proof on defendant to sustain the validity of his purchase. Defendant swears that he did not know Cummings owed more than four hundred dollars over the two mortgage debts, the debt due to himself and the other indebtedness, which by the terms of purchase he assumed to pay; and urges that, such being the fact, the prima facie case of fraud is conclusively met, and shows the sale to have been in all respects bona fide, and in no wise a fraud on the provisions of the bankrupt act. Standing alone, this testimony might be sufficient explanation; but when viewed in connection with other testimony, I cannot regard the sale as one entitled to the sanction of the court. When the mortgage to Sissen was made, June 25th, 1868, defendant was placed in the store as agent of the mortgagee, to see that the terms